**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alycia A. Taylor,** | ) | **CASE NO. 1:20 CV 2455** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PAMELA A. BARKER** |
| | ) | |
| **v.** | ) | |
| | ) | **Memorandum of Opinion** |
| **University Hospitals of Cleveland, *et al.,*** | ) | **and Order** |
| | ) | |
| **Defendants.** | ) | |

     *Pro se* Plaintiff Alycia A. Taylor brings medical malpractice claims and claims for denial of her constitutional "right to autonomy" under 42 U.S.C. § 1983 against University Hospitals of Cleveland, Inc. ("UH"), UH McDonald Women's Hospital, Inc., UH Physician Joseph Shawi, UH Physician J. Boyd, UH Physician Daniel Rzepka, University Hospital Health System, UH Bedford Medical Center, and UH Ultrasound Technician Jane Doe (collectively, UH Defendants).  She further brings a medical malpractice action against the Mayo Clinic in Rochester, Minnesota, Mayo Clinic Laboratories, Mayo Clinic Physician Gina K. Hesley, Mayo Clinic Physician Tiffany M. Sae Kho, Mayo Clinic Physician Pruthi Sandhya, and Mayo Clinic Physician Daniela L. Stan (collectively, Mayo Clinic Defendants).  Plaintiff also brings medical malpractice claims against the South Suburban Women's Center ("SSWC") and SSWC Physician John J. Farinacci (collectively, SSWC Defendants).  Finally, Plaintiff brings medical malpractice claims and

1

discrimination claims under Title VI, 42 U.S.C. 42 U.S.C. § 2000d against the Cleveland Clinic, Cleveland Clinic Physician Paulette Turk (Lebda), Cleveland Clinic Physician Kristina Shaffer, Cleveland Clinic South Pointe Hospital, Cleveland Clinic Laboratory, Cleveland Clinic Physician Samir Abraksia, and Cleveland Clinic Echo Technician Renee Keglovic (collectively, Cleveland Clinic Defendants).

## I. Background

Although Plaintiff's Complaint is quite lengthy, it contains very few factual allegations. It is difficult to determine the factual basis for many of Plaintiff's claims or the time frame for the events she describes.  After a lengthy examination of the pleading and its numerous exhibits, it appears Plaintiff's Complaint revolves around: (1) a surgery conducted at UH in 1999; (2) a colposcopy and mammogram performed by UH physicians in 2018; (3) mammograms and ultrasound procedures performed at the Mayo Clinic and at the Cleveland Clinic in 2020; (4) oncology screenings that took place at the Mayo Clinic in 2016 and at the Cleveland Clinic in 2020; and (5) an incident that occurred at a cardio screening procedure at the Cleveland Clinic in 2020.

The first seven counts of Plaintiff's Complaint pertain to a surgical procedure Plaintiff underwent in 1999.  She contends that on February 5, 1999, Dr. Shawi and Dr. Boyd performed surgery on her bladder, and cervix.  (Doc. 1 at 25).  She had been complaining of urinary incontinence and pelvic pain.  (Docs. 1-14, 1-15).  In the course of the surgery, Drs. Shawi and Boyd discovered and removed an ovarian cyst.  Plaintiff alleges they did not obtain her informed consent prior to removing the cyst.  (Doc. 1 at 26).  She claims they did not inform her of the cyst, nor did they recommend that she seek a follow-up sonogram or gynecology examination.  (Doc. 1 at 26-27).  Plaintiff indicates she had additional difficulties

2

after the surgery (Doc 1 at 28).  She claims they committed medical malpractice and denied her right to personal autonomy under the Fourteenth Amendment.

Plaintiff contends Dr. Rzepka performed a pelvic examination on November 20, 2018. (Doc. 1 at 34).  She indicates Dr. Rzepka performed a colposcopy at the same time.  A colposcopy allows a physician to get a closer look at the cervix.  If a suspicious area is identified during the colposcopy, the physician can take a biopsy of the tissue in question.[1] Plaintiff was told by the receptionist when she picked up her medical records that Dr. Rzepka did not perform a biopsy during that procedure.  Plaintiff appears to allege that Dr. Rzepka concealed the fact that he did not conduct a biopsy by failing to note that in her record. (Doc. 1 at 34-35).  She also indicates that Dr. Rzepka ordered an ultrasound and a mammogram. Plaintiff provides a report from Dr. Momenin who performed and interpreted the mammogram to Dr. Rzepka dated December 10, 2018 indicating the 3:00 position of Plaintiff's right breast, in which Plaintiff reported a lump, was just fibroglandular tissue.  He indicated the procedure was negative for malignancy.  (Doc. 1-13).  She alleges that through these actions, Dr. Rzepka concealed information from her about her health.  She claims this was also medical malpractice.

Plaintiff indicates she attempted to get a second opinion from Dr. Farinacci at the UH South Suburban Women's Center on June 13, 2019.  He placed an order for Plaintiff to have a mammogram.  Plaintiff contends she went to the Mercy Mobile Mammogram Bus in the parking lot at the South Suburban Women's Center in late July 2019 for the mammogram but was denied the procedure due to confusion with Dr. Farinacci's order.  (Doc. 1 at 8, Doc 1-3).

---

[1]  *See* https://www.hopkinsmedicine.org

Plaintiff then went to the Mayo Clinic in Rochester, Minnesota to obtain another opinion on the lump she detected in the 3:00 position of her right breast. She had been there in 2016 for a paraneoplastic autoantibody evaluation, which is a test that detects the body's immune response to cancer. (Doc. 1-22). That test was negative for cancer. (Doc. 1-6). On this visit on September 27, 2019, Dr. Stan ordered a breast ultrasound to be performed. Those results were read by Drs. Sea Kho and Hesley. They also reported that the 3:00 area of the right breast in which Plaintiff reported a lump was normal fibroglandular tissue with no evidence of malignancy. They noted an incidental finding of a benign 4 mm cyst in the 7:00 area of the right breast. The report concluded that there was no mammographic or sonographic evidence of malignancy. (Doc. 1-5).

Mayo Clinic physician Sandhya Pruthi discussed the results of the mammogram and ultrasound with Plaintiff and reviewed additional options for her to pursue. (Doc. 1-11). Dr. Pruthi suggested the breast pain Plaintiff was reporting was consistent with costochondritis. The physician acknowledged Plaintiff's concerns given her family history of cancer, and the density of her breast tissue which may obscure small masses. They discussed the pros and cons, including the cost and use of IV gadolinium, in obtaining a supplemental breast MRI or Molecular Breast Imaging ("MBI"). Plaintiff was advised to discuss these options with her insurance company and primary care physician. She was told that if she decided to pursue further testing, the Mayo Clinic would be happy to coordinate that testing. (Doc. 1-11). Plaintiff contends the Mayo Clinic doctors who reviewed her results did not inform her of the presence of the benign cyst. (Doc 1 at 10). She wrote a letter to the Mayo Clinic claiming they deliberately mischaracterized pertinent medical information and "sandwich[ing]" this

information between other results that were discussed with her. (Doc. 1-21 at 1-2). She claims the Mayo Clinic and its physicians committed medical malpractice.

Plaintiff decided to pursue the MRI or the MBI at the Cleveland Clinic. She saw Dr. Turk in July 2020 and brought her records from UH and the Mayo Clinic. She claims Dr. Turk denied having seen records from those hospitals but indicated she had seen records from Akron General Hospital. Plaintiff states she has never received treatment at Akron General, prompting her to request to see a manager for what she perceived as mishandling of her records. (Doc 1 at 15, Doc 1-10). She contends Dr. Turk indicated to Plaintiff that she thought it best to do another mammogram and then supplement that with a limited ultrasound. Dr. Turk reported no evidence of malignancy either in the lump identified by Plaintiff or in the 4 mm cyst that was noted by the Mayo Clinic. (Doc. 1-12). Plaintiff claims that in reviewing the images with her, Dr. Turk described areas of her breast as "fibro scattered elements." (Doc 1 at 16). Plaintiff interpreted this as an attempt by Dr. Turk to reclassify the breast density factor that had been assigned to her in the past to maliciously and deceitfully change her risk calculation for cancer. (Doc. 1 at 17-18). Dr. Shaffer reviewed the results and did not correct this language. (Doc. 1 at 18). Plaintiff concludes they misrepresented medical facts and asserts claims against them for medical malpractice. (Doc. 1 at 18).

Plaintiff also objects to the manner in which her blood tests were conducted and interpreted. Plaintiff had blood testing in 1998 at UH, which showed, among other things, that her red and white blood cell counts were below normal. (Doc. 1-30). She does not indicate what type of treatment she pursued for this condition. On June 24, 2020, Plaintiff went to Dr. Erin Hillard complaining of joint pain, fatigue, night sweats, generalized itching, and blurred vision. (Docs. 1-28, 1-29). Because Plaintiff had had abnormal blood counts in the past, Dr.

5

Hillard ordered blood tests for Plaintiff and referred her to Dr. Abraksia, an oncologist specializing in blood disorders.  (Docs. 1-28, 1-29).

Plaintiff saw Dr. Abraksia on June 30, 2020.  (Doc. 1 at 12).  Plaintiff claims that at this visit, Dr. Abraksia told her and her husband that he could not evaluate her condition or arrive at a diagnosis because he could not access the results of the blood tests she had done four days earlier at the Cleveland Clinic South Pointe Hospital Laboratory.  (Doc. 1 at 13).  Plaintiff alleges this was a lie because he was later able to access the results of that test.  (Doc. 1 at 13).  Dr. Abraksia had his assistant draw more blood from Plaintiff and submitted his own order for blood work but then cancelled it that same day, apparently when he was able to access the results of the test performed at South Pointe Hospital Laboratory.  (Doc. 1 at 13-14).  He concluded in his report to Dr. Hillard that all of Plaintiff's blood cell counts were within normal limits and there was no evidence of hematological abnormalities or malignancies.  (Doc. 1-29).  Plaintiff claims he underreported her chronic symptoms and mischaracterized other symptoms.  (Doc. 1 at 13-14).  She also contends he sent the copy of his report and the blood test results to Dr. Hillard.  Plaintiff claims he acted deceitfully and violated standards of care.

Finally, Plaintiff alleges that on July 14, 2020, she had an echogram performed at the cardiology lab at South Pointe Hospital.  (Doc. 1 at 76).  Although this was during the COVID-19 pandemic when hospitals and medical care providers were limiting access to their facilities, Plaintiff insisted that her husband be allowed to accompany her to the waiting area and to the procedure room.  (Doc, 1 at 76).  She claims echo technician Keglovic objected to the presence of Plaintiff's spouse.  (Doc. 1 at 76).  A manager came to defuse the situation and allowed Plaintiff's husband to sit outside of the room.  (Doc. 1 at 76).  Plaintiff also insisted that door to the room remain open.  (Doc. 1 at 77).  Plaintiff alleges that Keglovic was visibly annoyed

6

with her causing her to question Keglovic's supervisor whether Keglovis was able to administer the test properly.  (Doc. 1 at 77).  Plaintiff contends the test took less than an hour. She indicates she later discovered that Keglovic reported that Plaintiff was hostile, uncooperative and paranoid.  (Doc. 1 at 77).  Plaintiff denies this characterization and claims Keglovic is liable to her for defamation.  (Doc. 1 at 79)

Plaintiff's Complaint contains twelve counts.  Counts 1 through 5 contain claims against UH Defendants for medical malpractice.  Count 6 contains claims against Rzepka, Shawi and Boyd for fraudulent concealment of medical information.  Count 7 asserts claims under 42 U.S.C. § 1983 against the UH Defendants, contending they violated her constitutional right to autonomy under the Fourteenth Amendment.  Counts 8 and 9 contain claims against the Mayo Clinic Defendants for medical malpractice.  Count 10 asserts claims for fraudulent concealment against UH, the South Suburban Women's Center, Dr. Farinacci and Dr. Abraksia.  Count 11 contains claims for medical malpractice against the Cleveland Clinic Defendants.  Finally, Plaintiff asserts claims for discrimination under Title VI against the Cleveland Clinic, Dr. Abraksia, Dr. Turk, Dr. Shaffer, and Dr. Keglovic.

Dr. Farinacci, the Mayo Clinic Defendants, and the UH Defendants filed Motions to Dismiss under Rule 12(b)(6).  (Docs. 11, 12, and 18).  They each claim that Ohio's one-year statute of limitation for medical malpractice claims expired before Plaintiff filed this action.

## II.  Standard of Review

Federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990), and may not entertain an action over which jurisdiction is lacking.  *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  Defects in subject matter jurisdiction

7

cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings. *Curry v. U.S. Bulk Transport, Inc*. 462 F.3d 536, 539-40 (6th Cir. 2006); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988). Moreover, "[A] district court may, at any time, *sua sponte* dismiss a Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a Complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 436-37 (1974)); *see Hassink v. Mottl*, 47 Fed.Appx. 753, 755 (6th Cir. 2002) (holding that district court properly dismissed the case *sua sponte* for lack of subject matter jurisdiction where the Plaintiff's Complaint lacked an arguable basis in law).

### III.  Analysis

This Court must first determine whether federal subject matter jurisdiction is present in this case. Plaintiff asserts three bases for federal jurisdiction. First, she claims that because the Mayo Clinic Defendants are from Minnesota, she satisfies the requirements for diversity of citizenship jurisdiction. To establish jurisdiction under 28 U.S.C. § 1332(a)(1) based on diversity of citizenship, the Plaintiff must establish that she is a citizen of one state and *all* of the Defendants are citizens of other states. The citizenship of a natural person equates to his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir.1990). Plaintiff states she is a citizen of Ohio. She indicates the UH Defendants, the Cleveland Clinic Defendants, Dr. Farinacci, and the South Suburban Women's Center are also citizens of Ohio. Diversity of citizenship is not complete. Therefore, federal court jurisdiction cannot be based on diversity of citizenship.

8

Plaintiff also claims that her Complaint seeks more than $ 75,000 which allows her to litigate in federal court.  This is an incorrect statement of law.  That jurisdictional level of damages applies only to cases properly invoking diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  It does not provide a separate basis for federal court jurisdiction where diversity of citizenship is not present.

If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law.  In determining whether a claim arises under federal law, the Court looks only to the "well-pleaded allegations of the Complaint." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007).  Plaintiff asserts two federal claims, one against the UH Defendants under 42 U.S.C. § 1983 and the other under Title VI, 42 U.S.C. § 2000d against the Cleveland Clinic Defendants.

As an initial matter, Plaintiff cannot bring a claim under 42 U.S.C. § 1983 against any of the named Defendants.  This statute provides a cause of action against state government entities, officials and employees for violation of constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  None of the Defendants is a state government entity, official or employee.

The only other federal cause of action asserted by Plaintiff is under Title VI against the Cleveland Clinic Defendants.  Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in any program or activity receiving Federal financial assistance.  42 U.S.C. § 2000d.  Plaintiff alleges that because they accept patients with Medicare and Medicaid, the Cleveland Clinic is subject to Title VI.

Courts have consistently interpreted Title VI as providing no individual liability. E.g., *Thompson v. Blount Mem'l Hosp., Inc.*, No. 3:06CV228, 2006 WL 3098787, at *2-3 (E.D.

9

Tenn. Oct. 30, 2006); *Rubio ex rel. Z.R. v. Turner Unified School Dist*. No. 202, 453 F.Supp.2d 1295, 2006 WL 2801938 at *9 n. 11 (D.Kan.2006); *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 95 F.Supp.2d 723, 743 n. 13 (N.D. Ohio 2000); *Davis v. Flexman*, 109 F.Supp.2d 776, 793 (S.D. Ohio 1999); *Godby v. Montgomery County Bd. of Educ*., 996 F.Supp. 1390, 1413 (M.D.Ala.1998); *Jackson v. Katy Independent School Dist*, 951 F.Supp. 1293, 1298 (S.D.Tex.1996). Rather, Title VI claims are properly alleged against the institution that receives federal financial assistance. In this case, the Cleveland Clinic is the only proper Defendant for this cause of action. It cannot proceed against any of the individual Defendants.

Moreover, Plaintiff's allegations of discrimination are so vague and unsupported by factual allegations, she fails to establish this Court subject matter jurisdiction with regard to this claim. Title VI prohibits only intentional discrimination, and not merely activities having a disparate impact on members of a protected group. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). To state claims for intentional discrimination, Plaintiff's Complaint must allege "more than labels and conclusions;" rather her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court is aware that, at this stage, Plaintiff is not required to plead her discrimination claim with heightened specificity. *See Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 513-14 (2002). Nevertheless, Plaintiff must still provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 564. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). While the Plaintiff is not required to include detailed factual allegations, she must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or

10

a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*.; *New Albany Tractor v. Lousiville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting Twombly, 550 U.S. at 555.)

Plaintiff's Title VI claim never rises above the speculative level. (Doc. 1 at 81). The Court is left to guess at how she was treated differently than others, or how her race was a factor. She disagrees with the descriptive wording of her breast tissue in a medical report as "fibro scattered elements" as opposed to "heterogeneously dense" as described by previous physicians. (Docs. 1-5, 1-12). She alleges an employee incorrectly stated that her prior scans had come from Akron General Hospital instead of the Mayo Clinic. She contends a doctor was unable to find results from a recent blood test, took blood samples for a second test, found the original results, cancelled the redundant test and reported the normal blood count results to her primary care physician. Although Plaintiff labels these actions as malicious and deliberately deceptive, there are no factual allegations suggesting these actions were intentional, much less performed with malice toward the Plaintiff due to her race. Plaintiff also alleges racial discrimination when she was labeled by the cardio echo technician as a difficult patient. This notation in her file occurred after Plaintiff demanded that her husband be permitted to accompany her into a cardio echo procedure during the Covid-19 pandemic, insisted that the door be kept open, and then questioned the ability of the technician to conduct the test when she was clearly annoyed with Plaintiff's behavior. Title VI, like the other civil rights statutes is not a general civility code, nor does it guarantee that an organization will operate perfectly every time without errors. *See Oncale v. Sundowner Offshore Services, Inc,* 533 U.S.75, 80 (1998); *Burnett v. Tyco Corp*.,203 F.3d 980, 982 (6th Cir. 2000). The critical issue is whether members of one race are exposed to disadvantageous terms or conditions or

11

denied access to medically necessary treatments which members of the other races are not exposed. *See Oncale*, 533 U.S. at 80. There are no allegations in the Complaint that suggest this is the case. Simply adding the words malicious or hostile to the Defendants actions are not sufficient to cross the threshold of possible wrong-doing to a plausible legal claim.

All of the rest of the Plaintiff's claims arise, if at all, under state tort law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.*

Accordingly, this action is dismissed for lack of subject matter jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**


                                         s/ Pamela A. Barker_____
                                        PAMELA A. BARKER
Date:  1/25/2021                        U.S. DISTRICT JUDGE

12